IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RUSSELL DELP                    :
                                :
            Plaintiff,          :    3:25-cv-00233
                                :    (JUDGE MARIANI)
    v.                          :
                                :
HEXCEL CORPORATION              :
                                :
            Defendant.          :

## MEMORANDUM OPINION

Presently before the Court is Defendant Hexcel Corporation's ("Defendant" or

"Hexcel") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 18).

For the reasons that follow, Defendant's motion will be granted in part and denied in part.

## I.    INTRODUCTION & PROCEDURAL HISTORY

On February 6, 2025, Plaintiff Russell Delp ("Plaintiff" or "Delp") filed a complaint

against Defendant Hexcel alleging a single count of interference under the Family Medical

Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. (Doc. 1). On April 11, 2025, Defendant

moved to dismiss the complaint. (Doc. 12). Thereafter, Plaintiff filed the First Amended

Complaint ("FAC"), which is the operative pleading for purposes of this motion. (Doc. 14).

In the FAC, Plaintiff brings three claims against the Defendant: (1) a FMLA

interference claim, (Count I), a claim alleging equitable estoppel under Pennsylvania law,

(Count II), and a claim under the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001 et seq., alleging interference and retaliatory discharge (Count

III).  (Doc. 14).  On May 8, 2025, Defendant filed the instant motion to dismiss.  (Doc. 18).

The matter has been fully briefed and is ripe for disposition.[1]

## II.    FACTUAL ALLEGATIONS

In the FAC, Plaintiff alleges the following:

Plaintiff Russell Delp is an adult individual who resides in Pottsville, Pennsylvania.

(Doc. 14, ¶ 3).  Defendant Hexcel Corporation "is a corporation which has a place of

business located at 172 Industrial Park Rd., Saint Clair, PA."  (*Id.*, ¶ 4).  On or about

December 11, 2012, Plaintiff commenced employment with Defendant as a Machine

Operation, or "NC Operator" at Defendant's St. Clair facility.  (*Id.*, ¶ 5).  At all times material

hereto, Defendant employed 50 or more people within a 75-mile radius of the St. Clair

facility.  (*Id.*, ¶ 6).

For at least a year prior to his termination, Plaintiff was granted intermittent leave for

severe anxiety by Defendant through its third-party administrator, Matrix Absence

Management, Inc. ("Matrix").  (*Id.*, ¶ 7).  During his employment with the Defendant, the only

FMLA leave Plaintiff ever requested was intermittent FMLA leave for periodic flare-ups of

his anxiety condition, which is a serious and/or chronic health condition as defined by the

FMLA.  (*Id.*, ¶ 8).  Plaintiff never requested continuous FMLA leave.  (*Id.*, ¶ 9).

On December 11, 2022 and December 21, 2022, Matrix acknowledged Plaintiff's

eligibility to take "FMLA" leave for "his own" health condition, and Matrix acknowledged it

_____

[1]    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.

was waiting for paperwork to "evaluate approval or denial status," and Matrix also indicated that Plaintiff had used 1.7 weeks of FMLA protected leave in the 12 months preceding December 9, 2022 and notified Plaintiff that he had up to 10.3 weeks of FMLA leave as of December 9, 2022 (see Exhibits A and B hereto). (*Id.*, ¶ 10). On January 9, 2023, Matrix acknowledged receipt of a certification completed by Plaintiff's treating healthcare provider and approved intermittent FMLA leave to Plaintiff between December 9, 2022, and June 9, 2023 (see Exhibit C hereto). (*Id.*, ¶ 11).

Plaintiff suffered a panic attack related to his anxiety condition on or about April 7, 2023, and this caused him to step away from the workplace and go to his car to try to calm down. (*Id.*, ¶ 12). Plaintiff's time away from the workplace on April 7, 2023, was covered by his approved intermittent FMLA leave. (*Id.*, ¶ 13). Plaintiff did not intend to request continuous leave after this mental health incident on April 7, 2023. (*Id.*, ¶ 14).

On Monday April 10, 2023, and solely at the insistence of a Human Resources Representative named Brittany and the Defendant's Production Manager, Ryan Setlock, and George Kechula (Plaintiff's direct supervisor) Plaintiff was directed to consult with a counselor in Defendant's Employee Assistance Program ("EAP") "to discuss what occurred on April 7, 2023, to help save his job." (*Id.*, ¶ 15). "They told him he must go to EAP or be fired." (*Id.*, ¶ 16). Defendant's EAP is a work-based program that offers, among other things, short-term counseling, referrals, and follow-up services to employees who have personal and/or work-related problems. (*Id.*, ¶ 17). Plaintiff never requested to meet with

an EAP counselor, but he agreed to meet with the EAP counselor because he was forced to do so by his supervisor under the threat of termination.  (*Id.*, ¶ 18).

On or about April 10, 2023, the EAP counselor Bonita directed Plaintiff to go home and instructed him that she would contact him after she and other representatives of the Defendant decided what he should do.  (*Id.*, ¶ 19).  Plaintiff trusted Bonita because the supervisors represented that she would help him keep his job.  (*Id.*, ¶ 20).  The EAP counselor instructed Plaintiff to go out on short term disability ("STD") until he got counseling and was released to return by a mental health professional.  (*Id.*, ¶ 21).  Plaintiff did in fact file for STD on April 11, 2023, because Bonita assured him he would receive it and he needed to receive income (see Exhibits D and E hereto).  (*Id.*, ¶ 22).

Before Bonita ordered Plaintiff to be evaluated by a mental health professional, Plaintiff had no intention of doing so.  (*Id.*, ¶ 23).  "Plaintiff was happy with the treatment he was provided with by his primary care physician."  (*Id.*, ¶ 24).  Plaintiff followed the directives of Bonita because his supervisors and HR had directed him to do so, and Plaintiff had no reason at that time to distrust his supervisors or Bonita, all of whom had represented that his job security depended upon him following their directives.  (*Id.*, ¶ 25).  Plaintiff and Bonita made good faith attempts to schedule an appointment for Plaintiff with a mental health professional, but they were unable to do so for various reasons, including that some were not willing to accept new patients, and/or some did not accept his health insurance coverage.  (*Id.*, ¶ 26).  These failed efforts by Plaintiff to consult with a mental health

professional continued for about two weeks, at which point Bonita directed Plaintiff to instead be evaluated by his primary care physician. (*Id.*, ¶ 27).

On May 22, 2023, Matrix requested that Plaintiff provide a certification within 14 days if he wanted to extend his previously approved intermittent FMLA leave past June 9, 2023 (see Exhibit F hereto). (*Id.*, ¶ 28). On June 12, 2023, Matrix acknowledged receipt of the requested certification and approved an extension of Plaintiff's intermittent leave through December 8, 2023 (see Exhibit G hereto). (*Id.*, ¶ 29). Based upon the representations made by Matrix and the Defendant in the May 22, 2023, and June 12, 2023 letters, Plaintiff reasonably believed that his right to take intermittent FMLA leave had been extended through December 8, 2023, and that his job was secure. (*Id.*, ¶ 30). At all times material hereto, Plaintiff's requests for intermittent FMLA leave were supported by his primary care physician, who was competent to treat Plaintiff for his anxiety condition and to advise him regarding his need for, and use of, available FMLA leave. (*Id.*, ¶ 31).

On July 21, 2023, Defendant suddenly and without warning notified Plaintiff that his FMLA days purportedly expired on May 31, 2023, and that he was subject to discipline including possible termination (see Exhibit H hereto). (*Id.*, ¶ 32). At no time prior to July 21, 2023, did Defendant notify Plaintiff that he could possibly run out of approved FMLA days due to his forced leave of absence. (*Id.*, ¶ 33). In fact, on June 12, 2023, Defendant indicated it was only counting intermittent days Plaintiff had taken towards the number of weeks of FMLA leave he used (see Exhibit G hereto). (*Id.*, ¶ 34). The December 11, 2022,

letter was the last notice informing Plaintiff exactly how many days were available to him—and that was 10.3 weeks. (*Id.*, ¶ 35).

On May 20, 2023, Matrix received a certification from Plaintiff's primary care physician (See Exhibit D hereto). (*Id.*, ¶ 36). As stated above, on May 22, 2023, Plaintiff was informed that his FMLA leave would run out on June 9, 2023, but that he could request an extension by way of an updated certification. (*Id.*, ¶ 37). The certification was already submitted to Defendant on May 20, 2023 (see Exhibit D hereto). (*Id.*, ¶ 38). Based upon the said certification received by Matrix on May 20, 2023, and other documentation from Plaintiff's primary care physician, Matrix determined that there was not "enough information to support that Plaintiff was disabled"—i.e., he was capable of "performing the duties of [his] own job as a[n] NC Operator" (see Exhibit D hereto). (*Id.*, ¶ 39). Despite this determination of a deficient certification by Matrix on May 20, 2023, Defendant never demanded Plaintiff's return to the workplace. (*Id.*, ¶ 40). As said, Plaintiff was notified on June 12, 2023, that the extension of his intermittent FMLA leave was approved through December 8, 2023 (see Exhibit G hereto). (*Id.*, ¶ 41). Plaintiff had no reason to believe his job was in jeopardy based upon the representations made to him by Matrix, Bonita, and the Defendant. (*Id.*, ¶ 42).

Over the approximately 7+ weeks that Plaintiff was on consecutive leave before his FMLA time purportedly ran out, Defendant never notified Plaintiff in writing of his rights and responsibilities under the FMLA as was required by the FMLA Regulations at Section

825.300(c)(1) including, but not limited to, notice that the leave may be designated and counted against the employee's annual FMLA leave entitlement.  (*Id.*, ¶ 43).  In fact, based upon the representations made to Plaintiff, he knew only that he was forced to take leave for which he was promised to be paid (through STD) and that he was approved for FMLA leave through December 8, 2023 (see Exhibit G hereto).  (*Id.*, ¶ 44).  "The first written notification that Plaintiff received informing him that his FMLA leave [was] exhausted was sent to him on July 21, 2023—51 days after the effective date of his termination (see Exhibit H hereto)." (*Id.*, ¶ 46).

Plaintiff's FMLA days did not expire on May 31, 2023, because he never intended to take continuous FMLA leave after the incident on April 7, 2023, and to the contrary, Plaintiff was forced to commence a leave of absence as detailed above.  (*Id.*, ¶ 47).  Plaintiff was fully protected by his approved certifications for intermittent FMLA, and had he not been forced to take unwanted continuous leave on April 7, 2023, he would have utilized his intermittent FMLA leave as intended and would never have taken prolonged continuous leave.  (*Id.*, ¶ 48).  Had Plaintiff been sufficiently notified that his job could possibly be in jeopardy by taking lengthy continuous leave, his primary care physician would have approved his continued work, since the approved intermittent leave was adequate to treat his condition.  (*Id.*, ¶ 49).

Defendant's proffered reason for Plaintiff's termination—i.e., expiration of his FMLA leave—was mere pretext designed to mask the true unlawful reasons for Plaintiff's

termination.  (*Id.*, ¶ 50).  Plaintiff had a record with Defendant as an excellent Machine

Operator over a period of 11 years.  (*Id.*, ¶ 51).  "The only reason why Plaintiff was out in

excess of 12 weeks was because Defendant and its agents forced him out of work and

never informed him that his job could be in jeopardy while he was out on forced leave."  (*Id.*,

¶ 52).  Plaintiff was forced out of work under the pretext that Defendant and its agents were

trying to help him—not place him in a situation that put his job in jeopardy.  (*Id.*, ¶ 53).

Defendant misused the FMLA statute to force Plaintiff to remain out of work in excess of 12

weeks.  (*Id.*, ¶ 54).  In doing so, Defendant interfered with Plaintiff's FMLA rights by not

allowing him and his treating physician to choose how and when to utilize his available

FMLA leave time.  (*Id.*, ¶ 55).  It is up to the Plaintiff and his treating healthcare providers to

determine what type of leave is best for the Plaintiff.  (*Id.*, ¶ 56).  Defendant had no right to

force Plaintiff to take continuous FMLA leave.  (*Id.*, ¶ 57).

      Furthermore, Plaintiff relied in good faith on Defendant's representations that:  (1) he

had plenty of FMLA leave time available; and (2) that the EAP counselor was there to help

him.  (*Id.*, ¶ 58).  The eventual result of the Defendant's misuse of the FMLA statute and

regulations was Plaintiff's loss of his gainful employment with a job that he had held for 11

years.  (*Id.*, ¶ 59).  Defendant's actions were contrary to one of the purposes of the FMLA,

which is to protect eligible employees from losing their jobs.  (*Id.*, ¶ 60).  "Defendant's

misuse of the FMLA in this instance constituted unlawful interference."  (*Id.*, ¶ 61).  In the

alternative, Defendant must be equitably estopped from terminating Plaintiff, because

Plaintiff's reliance upon Defendant's and its agents' representations inequitably led to Plaintiff's termination. (*Id.*, ¶ 62). Defendant acted by and through its agents who had authority to hire, fire, and discipline Plaintiff. (*Id.*, ¶ 63). Plaintiff was unlawfully terminated by the Defendant in violation of the FMLA. (*Id.*, ¶ 64).

In Count I of the FAC, Plaintiff brings a claim for FMLA interference and alleges the following: "29 U.S.C. § 2615(a)(1) of the FMLA sets forth that '[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.'" (*Id.*, ¶ 66). By forcing Plaintiff on continuous leave under threat of termination, and by failing to notify Plaintiff of his rights and responsibilities, Defendant denied Plaintiff's rights to utilize the FMLA leave options which best suited him under the circumstances and such conduct interfered with Plaintiff's FMLA rights. (*Id.*, ¶ 67). In Wysong v. Dom Chem. Co., 503 F.3d 441 (6th Cir. 2007), the Sixth Circuit opined that:

> An involuntary-leave claim is really a type of interference claim. An employee may have claim under § 2615(a)(1) when an employer forces an employee to take FMLA leave when the employee does not have a 'serious health condition' that precludes h[im] from working.
>
> *Id.* at 449 (*see also* Hicks v. Leroy's Jewelers, Inc., No. 98-6596, 2000 WL 1033029, at *3-4 (6th Cir. July 17, 2000) (unpublished), *cert. denied.*, 531 U.S. 1146, 121 S.Ct. 1084, 148 L.Ed.2d 959 (2001) (see Exhibit I hereto).

(Doc. 14, ¶ 68).

Defendant and its agents violated the FMLA by forcing Plaintiff to take unwanted and unneeded continuous FMLA leave, causing him to be out of work for an unnecessary and

excessive time period, and Defendant thereafter justified termination of Plaintiff under the pretext that he exceeded his allotted 12 weeks of FMLA leave time by using the forced leave. (*Id.*, ¶ 69). Plaintiff's serious health condition did not prevent him from working every day between April 7, 2023, and May 31, 2023, because his serious health condition only caused him to be unable to work on an intermittent basis up to two days weekly. (*Id.*, ¶ 70). Had Plaintiff not been unnecessarily forced to take continuous FMLA leave, he would still be employed with the Defendant through the present and into the indefinite future. (*Id.*, ¶ 71).

Plaintiff's treating physician was a health care providers as defined by the FMLA. (*Id.*, ¶ 72). Plaintiff was at times on a plan of continuing treatment by his health care provider for his aforementioned serious and/or chronic health condition. (*Id.*, ¶ 73). Plaintiff provided notice to Defendant of his need for intermittent FMLA protected leave as soon as was practicable as required by the FMLA. (*Id.*, ¶ 74). Plaintiff was qualified for and otherwise entitled to take intermittent FMLA leave for himself at all times material hereto. (*Id.*, ¶ 75). As a direct result of Defendant's unlawful termination of Plaintiff's employment, Plaintiff has suffered and will continue in the future to suffer actual damages in the form of lost pay, lost benefits and other financial losses. (*Id.*, ¶ 76). "Plaintiff has and will be engaged in great efforts to mitigate his damages by searching for new employment, but he has to date, and may in the future be, unsuccessful in his efforts to find equivalent employment." (*Id.*, ¶ 77). Plaintiff is entitled to recover actual damages, including backpay and front pay and other economic damages. (*Id.*, ¶ 78). Plaintiff is entitled to recover

liquidated damages in an amount equal to actual damages because Defendant and its agents intentionally, and/or in bad faith, violated the FMLA. (*Id.*, ¶ 79). Plaintiff is entitled to recover reasonable attorneys' fees and costs associated with the prosecution of this lawsuit. (*Id.*, ¶ 80). Plaintiff is entitled to reinstatement of his employment. (*Id.*, ¶ 81).

In Count II of the FAC, Plaintiff purports to brings a claim for equitable estoppel under Pennsylvania law and alleges the following: "Defendant, by and through its agents, made misrepresentations to Plaintiff, and in particular: (1) that Plaintiff would keep his job if he met with an EAP counselor and followed her directives; (2) that Plaintiff had plenty of FMLA days available despite that he was forced on continuous leave; and (3) that the EAP representative was there to help ensure Plaintiff kept his job." (*Id.*, ¶ 83). "Plaintiff contends that he detrimentally relied upon these misrepresentations made by the Defendant and its agents in that he was terminated for following the directives of his supervisors and the EAP counselor." (*Id.*, ¶ 84). Plaintiff reasonably relied upon Defendant's misrepresentations, because they falsely promised that they were trying to ensure he would not be terminated and they had the authority to ensure Plaintiff's continued employment with Defendant—especially the HR Representative, Brittany. (*Id.*, ¶ 85). Had Plaintiff known that Defendant's actions would have resulted in his eventual termination as of June 1, 2023, and denial of STD benefits after May 31, 2023, Plaintiff could have taken alternative action, including, but not limited to, declining forced continuous leave, claiming that he was covered by the FMLA for intermittent leave when he suffered the panic attack and remaining on

intermittent FMLA which was approved through December 8, 2023. (*Id.*, ¶ 86). "As a result of his termination, Plaintiff suffered all of the losses set forth in the prior paragraphs in this First Amended Complaint and seeks equitable remedies to maintain the status quo including, but not limited to, monetary compensation equal to his financial losses." (*Id.*, ¶ 87).

Finally, in Count III, Plaintiff alleges a violation of the ERISA statute and alleges the following: "29 U.S.C. § 1140 of ERISA sets forth in part that: … '[i]t shall be unlawful for any person to discharge, . . . expel, . . . or discriminate against a participant or beneficiary for exercising any right to which [s]he is entitled under the provisions of an employee benefit plan . . . or for the purposes of interfering with the attainment of any right to which such participant may become entitled under the plan.'" (Doc. 14, ¶ 89). By and through its conduct, Defendant violated 29 U.S.C. § 1140 of ERISA by terminating Plaintiff because he exercised his right to apply for and receive short term disability benefits pursuant to Defendant's employee benefit plain. (*Id.*, ¶ 90). "Plaintiff is entitled to appropriate relief under 29 U.S.C. § 1132(a)(B) [sic] '. . . to recover benefits due to [him] under the terms of [his] plan." (*Id.*, ¶ 91). Accordingly, Plaintiff seeks to recover lost pay, lost bonuses, lost benefits and other financial losses as further supported by the allegations set forth above. (*Id.*, ¶ 92). Plaintiff also seeks reinstatement of his employment pursuant to 29 U.S.C. § 1332(a)(3) which allows Plaintiff to seek appropriate equitable relief to redress his unlawful

termination. (*Id.,* ¶ 93). Plaintiff also seeks recovery of reasonable attorney's fees and

costs pursuant to 29 U.S.C. § 1132(g)(1). (*Id.,* ¶ 94).

## III.   **STANDARD OF REVIEW**

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it

does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement

to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations,

alterations, and quotations marks omitted). A court "take[s] as true all the factual allegations

in the Complaint and the reasonable inferences that can be drawn from those facts, but . . .

disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707

F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted).

Thus, "the presumption of truth attaches only to those allegations for which there is

sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President*

*of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).  "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption."  *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'"  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal*, 556 U.S. at 678).  "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Id.* at 786-87 (quoting *Iqbal,* 556 U.S. 679).

## IV.  <u>ANALYSIS</u>

Defendant seeks dismissal of the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 18).  First, Defendant asserts that Plaintiff's FMLA interference claim alleged in Count I must be dismissed for failure to state a claim.    (Doc. 19 at 8-18).  According to Defendant, "Plaintiff now advances three theories of FMLA interference:  (1) failure to provide Plaintiff with a designation of his leave as FMLA leave or his rights and responsibilities under the FMLA; (2) that Plaintiff was not permitted to choose whether to take FMLA concurrently with other leave; or (3) Plaintiff was forced to take FMLA leave that he did not need."  (*Id.*, at 8).  "While Plaintiff's Amended Complaint jumbles all these theories together and fails to specify with any particularity which claims he is making, all fail

as a matter of law." (*Id.*). Second, Defendant asserts that Plaintiff cannot state a claim for

common law equitable estoppel alleged in Count II, because this doctrine is not an

exception to the employment at-will doctrine under Pennsylvania law. (*Id.*, at 18). Lastly,

Defendant seeks dismissal of Plaintiff's ERISA claim alleged in Count III, claiming that

Plaintiff failed to state a viable claim for ERISA retaliatory discharge or interference. (*Id.*, at

22-26).

### A.    Interference Under the Family Medical Leave Act

Plaintiff brings a claim under the FMLA alleging interference under various theories.

To state a claim for FMLA interference, a Plaintiff must establish:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an
> employer subject to the FMLA's requirements; (3) that plaintiff was entitled to
> FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to
> take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was
> entitled under the FMLA.

*Capps. v. Mondelez Glob., LLC*, 847 F.3d 144, 155 (3d Cir. 2017) (internal citation and

quotation marks omitted). "Interference claims can involve two theories:  denial of benefits

claims and failure to advise claims." *Conway v. ConnectOne Bank*, 2022 WL 1024616, at

*3 (3d Cir. Apr. 6, 2022).  To survive a motion to dismiss, an "employee merely needs to

show [he] was entitled to benefits under the FMLA and that [he] was denied them."

*Hofferica v. St. Mary Med. Ctr.*, 817 F. Supp. 2d 569, 576 (E.D. Pa. 2011) (internal citation

and quotation marks omitted).

"The stated purposes of the FMLA are to balance the demands of the workplace with the needs of families and to entitle employees to take reasonable leave for medical reasons." *Conoshenti v. Pub. Service Elec. & Gas. Co.*, 364 F.3d 135, 140-41 (3d Cir. 2004) (citations omitted). "In further of these objectives, the FMLA requires that an eligible employee shall be entitled to a total of twelve workweeks of leave during any twelve month period if the employee has a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Id.* at 141 (internal citations and quotation marks omitted). "In order to protect these substantive rights, the FMLA proscribes an employer from engaging in certain acts." *Id.* (citing 29 U.S.C. § 2615).

"Section 2615(a)(1) makes it 'unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under this subchapter.'" *Id.* (quoting 29 U.S.C. § 2615(a)(1)). "Section 2615(a)(2) makes it 'unlawful for any employer to discharge or in any other manner discriminate against an individual for opposing any practice made unlawful by this subchapter.'" *Id.* (quoting 29 U.S.C. § 2615(a)(2)). "Finally, § 2615(b) provides that '[i]t shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual—(1) has filed a charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter; (2) has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter; or (3) has testified, or is about to testify, in any inquiry or proceeding

relating to any right provided under this subchapter.'" *Id.* (quoting 29 U.S.C. § 2615(b)).

"The FMLA grants employees a cause of action against employers who violate § 2615." *Id.*

(citing 29 U.S.C. § 2617).

    "In addition, the United States Department of Labor has promulgated regulations

implementing the FMLA." *Conoshenti*, 364 F.3d at 141.  Here, Plaintiff relies on the

Department of Labor's regulations at 29 C.F.R. § 825.300.  (Doc. 20 at 11-18).  "The FMLA

requires employers to notify their employees of their FMLA rights, including providing a

'general notice,' an 'eligibility notice,' a 'rights and responsibilities notice,' and a 'designation

notice.'" *Conway*, 2022 WL 1024616, at *5 (citing 29 C.F.R. § 825.300(a)-(d)).  "An

employer's obligation to provide these individualized notices arises only after an employee

requests or takes leave." *Id* (describing types of notices under the FMLA).

    "The FMLA requires employes to provide employees with both general and individual

notice about the FMLA." *Lupyan v. Corinthian Coll., Inc.*, 761 F.3d 314, 318 (3d Cir. 2014).

"To meet the general notice requirements, an employer must post a notice of FMLA rights

on its premises." *Id.* (citing 29 U.S.C. § 2619(a)).  "Because employers have some

discretion in the way FMLA policies are implemented, employers must also include

information regarding the employer's FMLA policies in a handbook of similar publication."

*Id.*  "In addition, regulations issued by the Department of Labor require that an employer

give employees individual written notice that an absence falls under the FMLA, and is

therefore governed by it." *Id.* (citing 29 C.F.R. § 825.300)  "Thus, once an employer is on

notice that an employee is taking FMLA-qualifying leave, the employer must: (1) within five business days notify the employee of his or her eligibility to take FMLA leave, 29 C.F.R. § 825.300(b)(1); (2) notify the employee in writing whether the leave will be designated as FMLA leave, 29 C.F.R. § 825.300(d)(1); (3) provide written notice detailing the employee's obligation under the FMLA and explaining any consequences for failing to meet those obligations, § 825.300(c)(1); and (4) notify the employee of the specific amount of leave that will be counted against the employee's FMLA leave entitlement, § 825.300(d)(6)."[2] *Id.*

"The FMLA's requirement that employers inform employees of their rights under the Act is intended 'to ensure that employers allow their employees to make informed decisions about leave.'" *Lupyan*, 761 F.3d at 318 (quoting *Conoshenti*, 364 F.3d at 144)). It is well-settled in the Third Circuit that "[f]ailure to provide the required notice can constitute an interference claim." *Id.* However, an employer's failure to properly notify an employee of his FMLA rights does not in and of itself constitute an actionable claim for FMLA interference. *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 82, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002) (no relief under § 2615(a)(1) "unless the employee has been prejudiced by the violation"). "Prejudice occurs when the employer's failure to advise the plaintiff of her FMLA rights 'rendered h[er] unable to exercise [the right to leave] in a

---

[2]    "A designation notice 'informs the employee whether the FMLA leave request is approved; it also informs the employee of the amount of leave that is designated and counted against the employee's FMLA entitlement. An employer may also use this form to inform the employee that the certification is incomplete or insufficient and additional information is needed." *Calio v. Camden Cnty. Bd. of Chosen Freeholders*, 2023 WL 3674664, at *1 n.4 (3d Cir. May 26, 2023) (citations omitted).

meaningful way, thereby causing injury." *Id.* at 318-19 (quoting *Conoshenti*, 364 F.3d at

143)). "This requires [Plaintiff] to demonstrate that, had she been properly informed of her

FMLA rights, she could have structured her leave differently." *Id.* at 323; *see also*

*McGarrigle*, 2023 WL 2975870, at *5 ("A failure to advise claim becomes actionable when

the employee is prejudiced by an employer's failure to comply with the notification

requirements rending the employee unable to exercise her right to FMLA leave.").

According to Plaintiff, Defendant did not advise him of his rights under the FMLA

which resulted in prejudice. (Doc. 14, ¶¶ 32-33, 35, 43, 67). As noted, a Plaintiff claiming

FMLA interference based on the failure to advise must be able to show prejudice as a result

of that violation. *See Watson v. Drexel Uni.*, 2021 WL 4429826, at *3 (3d Cir. Sept. 27,

2021) ("Even if an employer fails to follow the Department of Labor regulations, however,

the FMLA provides no relief unless the employee has been prejudiced by the violation.")

(internal citation and quotation marks omitted).

Here, the Court finds that Plaintiff alleges sufficient factual content to plausibly state

a claim for interference under the FMLA based on the failure to advise and provide the

required notices that his leave fell under the FMLA and/or that his FMLA leave had expired.[3]

Moreover, Plaintiff alleges sufficient factual content, which the Court must take as true, to

establish that he has been prejudiced by the alleged failure to advise/provide appropriate

---

[3]     The Court does not read the FAC to allege a cause of action for FMLA retaliation or any cause of action sounding in discrimination. *See generally* (Doc. 14). To the extent that Plaintiff wishes to plead such a cause of action, he may do so in the second amended complaint.

notices under the FMLA. (Doc. 14, ¶¶ 32-33, 42-43, 46, 49, 52). Specifically, Plaintiff alleges that the failure of Defendant to advise/provide the proper FMLA notices caused him to use FMLA leave when it was not required which resulted in his over a decade long employment with Defendant Hexcel being terminated. Put differently, had Defendant provided Plaintiff with all proper FMLA notices he would have been able to make an informed decision about structuring his leave, which ultimately caused his termination.

Although sparse with respect to the FMLA interference claim alleging failure to advise/provide notice, Plaintiff's factual allegations that remain after the Court disregards Plaintiff's conclusory allegations and legal conclusions are enough to barely "nudge[] [the] claim[] across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570. *See, e.g.*, *Drdek v. Meyers Mgmt. Co., Inc.*, 2022 WL 17253824, at *4-6 (W.D. Pa. Nov. 3, 2022) (denying Rule 12(b)(6) motion to dismiss FMLA interference claim), *report and recommendation adopted*, 2022 WL 17252087 (W.D. Pa. Nov. 27, 2022); *O'Brien v. Lehigh Valley Health Network*, 2019 WL 2642000, at *2-5 (E.D. Pa. June 27, 2019) (denying Rule 12(b)(6) motion to dismiss FMLA interference claim); *Sopinski v. Lackawanna Cnty.*, 2016 WL 6826166, at *3-5 (M.D. Pa. Nov. 18, 2016) (same).

While Defendant argues that Plaintiff has not alleged prejudice and that Defendant provided all notices required, (Doc. 19 at 9-12), the Court disagrees. Most, if not all, of the cases relied upon by Hexcel in support of its motion to dismiss Plaintiff's FMLA interference claim were decided at the summary judgment stage, after full development of the factual

record, and not at the motion to dismiss stage. *See, e.g., Ragsdale*, 535 U.S. 81 (summary

judgment); *Lupyan*, 761 F.3d 314 (summary judgment); *Conoshenti*, 364 F.3d at 135

(summary judgment); *Sowell v. Kelly Servs., Inc.*, 139 F. Supp. 3d 686 (E.D. Pa. 2015)

(summary judgment). It may be true that Defendant Hexcel provided Plaintiff with all the

notices required by the FMLA and/or that Plaintiff suffered no prejudice as a result. But at

this early stage of the proceedings, Plaintiff has alleged sufficient factual content to plausibly

state a claim for FMLA interference based on failure to advise/provide proper notices under

the FMLA.

Plaintiff's second and third theories of FMLA interference are both confusing and

problematic. It is difficult for the Court to determine the type of FMLA interference claim

Plaintiff attempts to assert, and his opposition brief does little to nothing to clarify.

Moreover, Plaintiff did not cite a single case in this Circuit to support either the second or

third theory of FMLA interference. Nor did Plaintiff advance any arguments to counter

Defendant's cogent arguments in support of its motion to dismiss the second and third

theories of FMLA interference. A response that fails supply contrary authority or otherwise

address the defendant's argument, implicitly concedes that the plaintiff has failed to state a

claim. *See Litman v. GEICO Cas. Co.*, 2023 WL 5985286, at *2 (E.D. Pa. Sept. 13, 2023)

("Plaintiffs' Response fails to support contrary authority or otherwise address Defendant's

argument regarding the sufficiency of Count II, and thus concedes that the Amended

Complaint fails to state a claim"); *accord Hanoverian, Inc. v. Pennsylvania Dept. of Env't*

*Prot.*, 2008 WL 906545, at \*16 (M.D. Pa. Mar. 31, 2008).  Although the Court could grant Defendant's motion to dismiss on Plaintiff's failure to contest Defendant's arguments alone, it will nevertheless proceed to address the merits of the second and third theories of FMLA interference alleged in the FAC.

As to the second theory of FMLA interference, from what the Court can gather from the FAC, according to Plaintiff, he should have been able "to choose how and when he wished to utilize his available FMLA leave." (Doc. 14, ¶ 55).  Defendant, in contrast, alleges that this argument does not support a claim for FMLA interference because the FMLA is not discretionary, and it is "well-settled that leave taken for an FMLA-qualifying reason is required to be designated and counted as FMLA leave." (Doc. 19 at 13) (citing 29 C.F.R. § 825.300(d)(1)).  Plaintiff offers no case law support or argument to contest Defendant's arguments in support of dismissal the second theory FMLA interference.  Thus, the Court agrees with Defendant that Plaintiff has not advanced a plausible claim of FMLA interference on the rather confusing second theory of FMLA interference.

Similarly, Plaintiff's third theory of FMLA interference based on an "involuntary leave" claim also fails because Plaintiff has failed to plausibly allege that he was denied any FMLA benefits to which he was entitled under this theory of FMLA interference. (Doc. 19 at 15-18).  Like the second theory of FMLA interference, Plaintiff does not contest Defendant's arguments in support of dismissal of the third theory of FMLA interference.  Moreover, this theory of FMLA interference has not been adopted by the Third Circuit, and Plaintiff does

not argue otherwise. *See Figueroa v. Merritt Hospitality, LLC*, 2011 WL 4389585, at \*3

(E.D. Pa. Sept. 21, 2011) (noting involuntary leave theory of FMLA interference has not

been adopted by Third Circuit, and dismissing claim under Rule 12(b)(6)); *see also Tate v.*

*Philly Shipyard, Inc.*, 2020 WL 2306326, at \*3 (E.D. Pa. Apr. 16, 2020) (no cause of action

in Third Circuit where plaintiff alleged defendant forced him to take FMLA leave, noting

"even where a court has recognized a cause of action for involuntary leave it has done so

only where an employee is forced to take FMLA leave despite not having a serious health

condition") (citing *Wysong v. Dow Chems. Co.*, 503 F.3d 441, 449 (6th Cir. 2007)); *Howard*

*v. Pennsylvania Dept. of Public Welfare*, 2013 WL 102662, at \*7 (E.D. Pa. Jan. 9, 2013)

("The Third Circuit has not adopted or addressed an involuntary leave theory in FMLA

interference claims.").[4]

---

[4]     In *Figueroa*, the plaintiff alleged she "was fully capable of working at the time she was placed on alleged involuntary leave," but the Court dismissed such theory of FMLA interference, noting that the plaintiff "essentially admitted that she was not at that time entitled to FMLA leave." *Figueroa*, 2011 WL 4389585, at \*3. Here, Plaintiff alleges that, "[h]ad Plaintiff been sufficiently notified that his job could possibly be in jeopardy by taking lengthy continuous leave, his primary care physician would have approved his continued work, since the approved intermittent leave was adequate to treat his condition." (Doc. 14, ¶ 49). In addition, the FAC is replete with references to Plaintiff's chronic and/or serious medical condition. (*Id.*, ¶ 8) (stating Plaintiff's anxiety condition "is a serious and/or chronic health condition as defined by the FMLA"); (*Id.*, ¶ 70) ("Plaintiff's serious health condition did not prevent him from working every day between April 7, 2023 and May 31, 2023, because his serious health condition only caused him to be unable to work on an intermittent basis up to two days weekly."); (*Id.*, ¶ 73) ("Plaintiff was at all times on a plan of continuing treatment by his health care provider for his aforementioned serious and/or chronic health condition.").

    The Court finds that Plaintiff Delp cannot maintain a FMLA interference claim based on the theory of "involuntary leave" as pled, which, again, has yet to be recognized as a cognizable FMLA claim by the Third Circuit. *See Tate*, 2020 WL 2306326, at \*3 (E.D. Pa. Apr. 16, 2020) ("even where a court has recognized a cause of action for involuntary leave it has done so only where an employee is forced to take FMLA leave despite not having a serious health condition"); *id.* ("Our Court of Appeals has yet to recognize an involuntary leave claim under the FMLA.").

23

At bottom, Plaintiff has failed to plausibly allege that he was entitled to FMLA benefits and that he was denied any FMLA benefits to which he was entitled under either the second or third theory of FMLA interference. The FMLA interference claim based on the first theory—the failure to advise—survives and will proceed to discovery.[5] Accordingly, Defendant's motion to dismiss Count I is granted in part and denied in part. The Court will dismiss Plaintiff's second and third theory of liability for FMLA interference without prejudice for failure to state a claim. Plaintiff will be granted leave to amend the FAC within twenty-one days of the date of the accompanying Order.

### B.  Plaintiff's Equitable Estoppel Claim Fails as a Matter of Law.

Defendant next move to dismiss Count II of the FAC, alleging a claim for equitable estoppel under Pennsylvania law. According to Defendant, Count II fails as a matter of law because Plaintiff was an at-will employee. In opposition, Plaintiff cites to wholly inapposite case law and does not address Defendant's argument in support of dismissal. (Doc. 20 at 19-21). In essence, Plaintiff claims that his former employer Defendant Hexcel is equitably estopped from terminating his at-will employment based on the employer's conduct and

---

[5]     The Court acknowledges that Defendant submitted certain exhibits, which appear to be FMLA notices, attached to its reply brief in support of its motion to dismiss. (Docs. 21-1). When "decid[ing] a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). "However, an exception to the general rule holds that when a document attached to a motion to dismiss is integral or explicitly relied upon in the complaint, the document can be considered without converting the motion into one for summary judgment." *Douglas v. Kensington Community Corp. for Individual Dignity*, 775 F. Supp. 3d 881, 891 (E.D. Pa. 2025). But Defendant did not attach these documents to its opening brief in support of its motion dismiss or to the motion itself. Rather, Defendant attached these documents for the first time in its reply brief. Thus, the Court will not consider the documents submitted by Defendant at the motion to dismiss stage.

Plaintiff Delp's reasonable expectations.  Plaintiff seeks equitable relief in the form of

reinstatement and monetary damages.  However, Plaintiff does not allege the existence of

any employer contract between him and the Defendant.

In *Geary v. United States Steel Corporation*, 456 Pa. 171, 319 A.2d 174 (1974) the

Pennsylvania Supreme Court discussed at-will employment and stated that "absent a

statutory or contractual provision to the contrary, the law has taken for granted the power of

either party to terminate an employment relationship for any or no reason." *Id.* at 175.  "It

should be noted that, as a general rule, there is no common law cause of action against an

employer for termination of an at-will employment relationship." *Clay v. Advanced Comput.*

*Applications*, *Inc.*, 522 Pa. 86, 89, 559 A.2d 917, 918 (Pa. 1989).  "Exceptions to this rule

have been recognized in only the most limited of circumstances, where discharges of at-will

employees would threaten clear mandates of public policy." *Id.*  Stated differently, the

Pennsylvania Supreme Court has clearly stated "that a cause of action for wrongful

discharge in an at-will employment relationship does not exist." *Paul v. Lankenau Hosp.*,

524 Pa. 90, 95, 569 A.2d 346 (Pa. 1990).

"The doctrine of equitable estoppel is not an exception to the employment at-will

doctrine.  An employee may be discharged with or without cause, and our law does not

prohibit firing an employee for relying on an employer's promise." *Id.*; *see also Dyche v.*

*Bonney*, 277 Fed. App'x 244, 246 (3d Cir. 2008) (noting that plaintiff's "promissory estoppel

theory is invalid under Pennsylvania law") (citing *Paul*, 524 Pa. 90); *Navarro v. Hotel*

*Belvidere, LLC*, 2019 WL 4439582, at *4 (M.D. Pa. Sept. 16, 2019) (rejecting estoppel claim for at-will employee, noting "as a matter of law, even if Defendants made a promise to Navarro, Navarro would have no legal entitlement to relief based on the theory of detrimental reliance").

Here, Plaintiff's allegations that Defendant Hexcel is equitably estopped from terminating his employment based on alleged promises and misrepresentations fails at a matter of law. Under *Clay* and *Paul*, there is no common law cause of action against an employer for termination of an at-will employment relationship under Pennsylvania law. Nor do any of the limited exceptions apply based on the facts alleged in the FAC. *See* (Doc. 14, ¶¶ 82-87). The Court will dismiss Count II without prejudice, with leave to amend. Although amending Count II may well be futile, the Court will nevertheless grant Plaintiff leave to amend his FAC to assert plausible factual content demonstrating that Plaintiff was not an at-will employee or that his termination violated a clear public policy. *See McCarthy v. Luzerne Cnty.*, 2011 WL 2607174, at *5 (M.D. Pa. July 1, 2011) ("Pennsylvania's common law does not permit a cause of action against an employer for discharge where employment is at-will unless a clear public policy is threated by the discharge. Thus, no cause of action exists again an employer for breaking a promise that falls short of a contractual obligation.").

## C.    *ERISA Interference &* Retaliatory Discharge

Plaintiff next bring a claim in Count III alleging interference and retaliatory discharge under Section 510 of the ERISA statute, 29 U.S.C. § 1140. Defendant seeks dismissal of

Count III, claiming that Plaintiff has not sufficiently pled a claim for ERISA retaliatory

discharge or interference. (Doc. 19 at 22-26). Plaintiff opposes Defendant's motion but fails

to cite a single ERISA case and appears to confuse the ERISA statute with the FMLA

statute. (Doc. 20 at 21-24). And, notably, Plaintiff does not contest any of Defendant's

argument in support of its motion to dismiss Count III. *See generally* (Doc. 20); (Doc. 22-1).

"ERISA is a comprehensive statute designed to promote the interest of employees

and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S.

85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). "The statute imposes participation, funding,

and vesting requirements on pensions plans. It also sets various uniform standards,

including rules concerning reporting, disclosing, and fiduciary responsibilities, for both

pension and welfare plans." *Id.* at 91. "As part of this system, Congress included various

safeguards to preclude abuse and to completely secure the rights and expectations brought

into being by this landmark reform legislation." *Edwards v. A.H. Cornell & Son, Inc.*, 610

F.3d 217, 220 (3d Cir. 2010) (internal citation and quotation marks omitted).

"One such safeguard is ERISA's anti-retaliation of whistleblower provision."

*Edwards*, 610 F.3d at 220; *see* 29 U.S.C. § 1140 ("It shall be unlawful for any person to

discharge, fine, suspend, expel, or discriminate against any person because he has given

information or has testified or is about to testify in any inquiry or proceeding related to this

chapter or the Welfare and Pensions Plans Disclosure Act."). "Put simply, the purpose of

this provisions is to proscribe interference with rights protected by ERISA." *Edwards*, 610

27

F.3d at 220 (internal citation and quotation marks omitted). "By its plain terms, Section 510 prohibits not only retaliation for use of past benefits, but also interference with the right to future benefits." *Kairys v. Southern Pines Trucking, Inc.*, 75 F.4th 153, 163 (3d Cir. 2023).

The Court will first address the viability of Plaintiff's claim for ERISA retaliatory discharge. As discussed, Section 510 of ERISA, 29 U.S.C. § 1140, provides that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding related to this chapter or the Welfare and Pensions Plans Disclosure Act." 29 U.S.C. § 1140. To state a claim for retaliatory discharge under the ERISA statute, a plaintiff must demonstrate that: "(1) he or she participated in a statutorily protected activity; (2) he or she was subject to an adverse employment action; and (3) there is a causal connection between the participation and the adverse action." *Smith v. West Manheim Twp.*, 2011 WL 5117618, at *4 (M.D. Pa. Oct. 25, 2011). "The causal connection can be demonstrated through proof of either (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Id.*

Upon review of the FAC, the Court agrees with Defendant that Count III must be dismissed because Plaintiff has failed to allege, plausibly or otherwise, that he engaged in any protected activity and that such protected activity was causally related to his

termination.  (Doc. 14, ¶¶ 89-94); *see Smith*, 2011 WL 5117618 at *4 (granting motion to dismiss claim of retaliatory discharge under ERISA).

As for the claim alleging ERISA interference in Count III, "[a] plaintiff can establish a *prima facie* claim of ERISA interference by demonstrating:  (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled."  *Smith*, 2011 WL 5117618, at *2 (internal citation and quotation marks omitted).  However, "a plaintiff must demonstrate that defendant had the specific intent" to violate 29 U.S.C. § 1140.  *DiFederico v. Rolm Co.*, 201 F.3d 200, 204 (3d Cir. 2000).  "This requires the plaintiff to show that the employer made a conscious decision to interfere with the employee's attainment of pension eligibility or additional benefits."  *Id.* at 205.  "The plaintiff may use both direct and circumstantial evidence to establish specific intent, but when the plaintiff offers no direct evidence . . . the court applies a shifting burdens analysis, similar to that applied in Title VII employment discrimination claims."  *Id.* Put differently, "[a] plaintiff must show that the employer made a conscious decision to interfere with the employee's attainment of pension eligibility or additional benefits." *Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 785 (3d Cir. 2007) (internal citation and quotation marks omitted).

Here, the Court again agrees with Defendant that Plaintiff has not alleged any factual content, plausibly or otherwise, to demonstrate that Defendant "had the specific intent to violate ERISA" by terminating him after he applied for short-term disability benefits.  *See*

*Smith*, 2011 WL 5117618, at * 3 (dismissing ERISA interference claim, noting that the complaint "contains no facts from which the court can draw a reasonable inference that the defendant is liable for the misconduct alleged"). There are simply no allegations in the FAC demonstrating that Plaintiff is entitled to relief under the ERISA statute as currently pled. (Doc. 14, ¶¶ 89-94).

## V.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss will be granted in part and denied in part. Plaintiff will be granted leave to amend. A separate order follows.

Robert D. Mariani
United States District Judge