IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RUSSELL DELP                          :

          Plaintiff,                :    3:25-cv-00233
                                :    (JUDGE MARIANI)
   v.                                :

HEXCEL CORPORATION                    :

          Defendant.                :

FILED
SCRANTON

MAR 10 2026

PER ____ JKL ____
DEPUTY CLERK

## MEMORANDUM OPINION

Before the Court is Defendant Hexcel Corporation's ("Defendant" or "Hexcel") motion to dismiss Plaintiff Russell Delp's ("Plaintiff" or "Delp") Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 27).  Specifically, Defendant seeks dismissal of the SAC which brings a single count for FMLA interference under various theories, including a theory of "forced" or "involuntary leave" that has not been recognized by the United States Court of Appeals for the Third Circuit and which this Court previously rejected.  Because the SAC does not solely rest on the forced leave theory of FMLA interference liability, and Plaintiff now plausibly alleges violations of the FMLA and its implementing regulations, Defendant's motion will be denied.

## I.    INTRODUCTION & PROCEDURAL HISTORY

On February 6, 2025, Plaintiff filed a complaint against Defendant Hexcel alleging a single count of interference under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*  (Doc. 1).  On April 11, 2025, Defendant moved to dismiss the complaint.  (Doc. 12).

Thereafter, Plaintiff filed the First Amended Complaint ("FAC"). (Doc. 14). In the FAC, Plaintiff brought three claims against the Defendant: (1) a FMLA interference claim, (Count I), a claim alleging equitable estoppel under Pennsylvania law, (Count II), and a claim under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, alleging interference and retaliatory discharge (Count III). (Doc. 14). On May 8, 2025, Defendant moved to dismiss. (Doc. 18).

On September 10, 2025, the Court granted in part and denied in part Defendant's motion. (Docs. 24-25). Counts II and III were dismissed without prejudice. With respect to Count I, Plaintiff advanced several theories of FMLA interference and the Court granted in part and denied in part Defendant's motion. Specifically, the Court dismissed Plaintiff's FMLA interference claim based on the forced or involuntary leave theory, noting that this theory was not recognized by the Third Circuit. The Court permitted Plaintiff's claim to proceed on his FMLA interference claim based on the failure to advise and provide notices.

Instead of proceeding to discovery, Plaintiff filed the SAC on September 29, 2025. (Doc. 26). On October 14, 2025, Defendant again moved to dismiss. (Doc. 27). The SAC now brings a single count of FMLA interference based on the involuntary leave theory the Court previously rejected as well as other alleged violations of the FMLA and its implementing regulations. The matter has been fully briefed and is ripe for disposition.[1]

---

[1]    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331.

2

## II.    <u>FACTUAL ALLEGATIONS</u>

In the SAC, Plaintiff alleges the following:

Plaintiff Russell Delp is a former employee of Defendant Hexcel, where he had worked for over twelve years as a Machine Operator or "NC Operator." (Doc. 26, ¶¶ 3-5). For at least a year prior to his termination, Plaintiff was approved to take intermittent leave for severe anxiety by Defendants through its third-party administration, Matrix Absence Management, Inc. ("Matrix"). (*Id.*, ¶ 7). The only FMLA Leave Plaintiff ever requested was intermittent FMLA leave for periodic flare-ups of his generalized anxiety disorder and recurrent major depressive disorder, which arose following the death of his wife in 2022. (*Id.*, ¶ 8). Plaintiff alleges these "disorders are serious and/or chronic health condition[s] as defined by the FMLA." (*Id.*).

After he first applied for intermittent FMLA leave, Plaintiff would sometimes suffer panic attacks at the workplace and would sometimes start periods of intermittent leave at the time of the attacks. (*Id.*, ¶ 9). The last incident when Plaintiff initiated intermittent FMLA leave following a panic attack at work was in the Fall of 2022. (*Id.*, ¶ 10). Plaintiff's two supervisors, Ryan Setlock (Lead Production Manager) and George Kachula (Supervisor) accompanied Plaintiff to his home from the workplace following this panic attack. (*Id.*).

On December 11 and December 21, 2022, Matrix reacknowledged Plaintiff's eligibility to continue to take intermittent FMLA leave for "his own" health condition. (*Id.*, ¶ 11). Matrix also acknowledged it was waiting for paperwork to "evaluate approval or denial

status" and further indicated that Plaintiff had used only 1.7 weeks of FMLA protected intermittent leave in the 12 months preceding December 9, 2022, and notified Plaintiff that he had up to 10.3 weeks of FMLA leave as of December 9, 2022. (*Id.*).

On January 9, 2023, Matrix approved Plaintiff's intermittent FMLA leave between December 9, 2022, and June 9, 2023. (*Id.*, ¶ 12). Plaintiff suffered another panic attack related to his anxiety condition on or about April 7, 2023, causing him to step away from the workplace and go to his car to try to calm himself down. (*Id.*, ¶ 13). Plaintiff's time away from work on April 7, 2023, was covered by his approved intermittent FMLA leave. (*Id.*, ¶ 14).

On Monday April 10, 2023, and solely at the insistence of Defendant's Human Resources Representative Brittany and his supervisors Ryan Setlock and George Kachula, Plaintiff was directed to consult with a counselor in Defendant's Employee Assistance Program ("EAP") to discuss what occurred on April 7, 2023, to "help save his job." (*Id.*, ¶ 15). Brittany, Setlock, and Kachula "told Plaintiff he must go to EAP or be fired." (*Id.*, ¶ 16). Defendant's EAP is a work-based program in Defendant's policy handbook that offers, among other things, short-term counseling, referrals, and follow-up services to employees who have personal and/or work-related problems. (*Id.*, ¶ 17). Plaintiff never requested or desired to meet with an EAP counselor, but he did so because he was forced to do so by his supervisors under the threat of termination. (*Id.*, ¶ 18).

On or about Monday April 10, 2023, Bonita (Defendant's EAP counselor) directed Plaintiff to go home and instructed him that she would contact him after she and other representatives of the Defendant decided what he should do. (*Id.*, ¶ 19). Plaintiff trusted Bonita because his supervisors represented that she would help him keep him job. (*Id.*, ¶ 20). Bonita later directed Plaintiff to go out on what she called short term disability for six months until October 1, 2023, although Plaintiff claims he did not need to do so. (*Id.*, ¶ 21). Bonita further directed Plaintiff to undergo "counseling by a mental health professional," although Plaintiff claims he did not need to do so. (*Id.*).

Before Bonita ordered Plaintiff to be evaluated by a mental health professional, Plaintiff had no intention of doing so and no healthcare professional had recommended that he do so. (*Id.*, ¶ 22). Defendant forced Plaintiff to take unwanted leave to undergo unwanted and unnecessary treatment from a mental health professional. (*Id.*, ¶ 23). Plaintiff "would have remained working full time with his approved intermittent FMLA had he not been forced to take this unwanted leave by Defendant." (*Id.*, ¶ 24). Plaintiff "relied upon the representations of Bonita and his supervisors that he would be allowed to return to work at the end of this forced leave, because they told him his job would be saved if he followed Bonita's directive." (*Id.*, ¶ 25).

Plaintiff notified Matrix that he was going out of leave at the insistence of Defendant and Bonita. (*Id.*, ¶ 26). On April 24, 2023, Defendant purports to have sent a letter to Plaintiff stating that "This letter is in regard to the Family and Medical Leave Act (FMLA),

state leave entitlement, and/or employer authorized policy you requested with Matrix

Absence Management, Inc (Matrix) on or about 04/11/2023." (*Id.*, ¶ 27). The April 24,

2023, letter did not specify that Plaintiff requested FMLA leave but instead stated that he

had requested one of three different categories of leave. (*Id.*, ¶ 28). Of the three leave

options mentioned in Defendant's April 24, 2023 letter, the applicable leave was the

undefined "employer authorized policy," which was the aforementioned forced leave. (*Id.*, ¶

29). "The April 24, 2023, letter confirms Plaintiff's notification to Matrix that he requested

the leave forced upon him by Defendant's EAP representative." (*Id.*, ¶ 30).

On May 8, 2023, Matrix purports to have sent Plaintiff another letter stating: "Your

leave requested is NOT approved under FMLA because no documentation was returned to

certify the leave . . . [and t]his denial pertains only to the FMLA and/or state leave

entitlements and does not affect any other benefits for which you may be eligible." (*Id.*, ¶

31). The May 8, 2023, letter served to confirm the fact that Plaintiff was on forced leave by

EAP and categorized this forced leave as: "other types of leaves of absence you may be

eligible for." (*Id.*, ¶ 32). Plaintiff "did not need to seek approval from Matrix for the leave

that started on April 10, 2023, because Bonita and Plaintiff's supervisor preapproved of this

forced leave." (*Id.*, ¶ 33). In the interim and because Plaintiff and Bonita were unable to

schedule an appointment for Plaintiff with a metal health professional, Bonita "later

conceded that Plaintiff could instead be seen by his primary care physician." (*Id.*, ¶ 34).

6

On May 12, 2023, Plaintiff went to see his primary care physician, who noted, in part, that Plaintiff informed him that he had "been of work for this month . . . [and] work has been trying to get him in to see a psychiatrist but has been unsuccessful [and] April 10 was [his] first day off of work [and he w]as told by work to put in a 6 month window . . . [with an] October 1st return to work." (*Id.*, ¶ 35). Dr. Iaccarino confirmed in his office notes that Plaintiff was put on forced leave for six months with a return date on October 1, 2023, and further confirmed that it was the employer who wanted Plaintiff to see a psychiatrist. (*Id.*, ¶ 36).

On May 22, 2023, Matrix approved Plaintiff's aforementioned intermittent FMLA leave which was approved in January 2023 to continue through June 9, 2023, and Matrix requested a new certification to extend this intermittent leave. (*Id.*, ¶ 37). On June 12, 2023, Matrix acknowledged receipt of the requested certification for intermittent FMLA leave and approved an extension of Plaintiff's intermittent FMLA leave through December 8, 2023. (*Id.*, ¶ 38). The May 22, 2023, and June 12, 2023, letters made no adjustment of FMLA leave days left based on the aforementioned forced leave that took place between April 10, 2023, and June 12, 2023. (*Id.*, ¶ 39). Based upon the representations made by Matrix and Defendant in these letters, "Plaintiff reasonably believed that his right to take intermittent FMLA leave had been extended through December 8, 2023, and that this intermittent leave would be available to him after he returned to work on October 1, 2023." (*Id.*, ¶ 40). Plaintiff alleges that his forced leave was unrelated to his requested intermittent FMLA, and

7

that Matrix's correspondence through June 12, 2023, confirmed that these were two separate matters. (*Id.*, ¶ 41). "At all times material hereto, Plaintiff's requests for intermittent FMLA leave were supported by his primary care physician, who was competent to treat Plaintiff for his anxiety condition and to advise him regarding his need for and use of available FMLA leave." (*Id.*, ¶ 42).

On July 21, 2023, Defendant notified Plaintiff for the first time that he had purportedly used up all of his FMLA days as of May 31, 2023, due to the "forced continuous leave he had taken between April 10, 2023, and May 31, 2023." (*Id.*, ¶ 43). Defendant and Matrix knew that Plaintiff's leave was forced leave under its EAP policy and was not FMLA leave, so their decision to suddenly falsely claim that Plaintiff exceeded his FMLA time was made to falsely justify Plaintiff's termination due to a violation of the FMLA which never occurred. (*Id.*, ¶ 45). "Defendant intentionally and unlawfully interfered with Plaintiff's FMLA rights by permanently denying his return to workplace after his brief intermittent leave on April 7, 2023." (*Id.*, ¶ 46). Plaintiff alleges that Defendant violated multiple FMLA regulations in order to facilitate its intentional interference with his FMLA rights. (*Id.*, ¶ 47).

In the SAC, Plaintiff brings a single count of FMLA interference. (*Id.*, ¶¶ 47-61). 29 U.S.C. § 2615(a)(1) of the FMLA provides "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." (*Id.*, ¶ 48). Plaintiff was approved for intermittent FMLA which allowed him to take intermittent time off from work for flare-ups of his anxiety condition. (*Id.*, ¶ 49).

Pursuant to the FMLA, Plaintiff had the right to return to the workplace with the same working conditions after he started a brief intermittent leave on April 7, 2023.  (*Id.*, ¶ 50).

After Plaintiff took approved intermittent leave during regular work hours on April 7, 2023, Defendant intentionally violated the FMLA by interfering with his FMLA rights.  (*Id.*, ¶ 51).  According to Plaintiff, Defendant interfered with Plaintiff's FMLA rights by:

(1) Denying Plaintiff's right to return to the same position or an equivalent position after his brief leave on April 7, 2023, as required by 29 C.F.R. § 825.100(c) and 29 C.F.R. § 825.215(a);

(2) Unlawfully rejecting the previously approved terms of Plaintiff's medical certification, by first failing to obtain a proper second opinion pursuant to 29 C.F.R. § 825.307(b);

(3) Denying Plaintiff's right to return to work with equivalent pay and working conditions pursuant to 29 C.F.R. § 825.100(c) and 29 C.F.R. § 825.215(c), and instead forcing him to take a six month leave of absence and ultimately terminating him on July 21, 2023 thereby permanently denying him the right to earn the equivalent pay he would have earned by working his normal scheduled hours for Defendant;

(4) Unlawfully forcing Plaintiff to be unnecessarily absent for work for a period of six months and thereafter terminating him in violation of 29 C.F.R. § 825.205(a)(1), which prohibits Defendant from forcing Plaintiff to take leave that is more

necessary to address the circumstances that precipitated the need for his intermittent leave on April 7, 2023;

(5) Unlawfully forcing Plaintiff to be absent from work after he took leave on April 7, 2023, for a period of six months in violation of 29 C.F.R. § 825.205(a)(2) which limits forced leave to only a time during which it is physically impossible to permit the employee to work after a period of FMLA leave;

(6) Unlawfully terminating Plaintiff under the false pretext that he had exceeded his FLMA leave during his forced leave despite that he did not exceed his 12 weeks of available FMLA leave provided pursuant to 29 C.F.R. § 825.200;

(7) Unlawfully denying Plaintiff his right to utilize his approved intermittent FMLA leave pursuant to 29 C.F.R. § 825.308 after approving his recertification in January 2023 and without requesting another certification thereafter;

(8) Forcing Plaintiff out of work and terminating him because he exercised his right to take intermittent FMLA leave on April 7, 2023.

(Doc. 26, ¶¶ 51(a)-(h)).

Plaintiff's treating physician was a healthcare provider as defined by the FMLA. (*Id.*, ¶ 52). At all times Plaintiff was on a plan of continuing treatment by his healthcare provider for his aforementioned serious and/or chronic health condition. (*Id.*, ¶ 53). Plaintiff provided notice to Defendant of his need for intermittent FMLA protected leave as soon as was

practicable as required by the FMLA. (*Id.*, ¶ 54). Plaintiff was qualified for and otherwise entitled to take intermittent FMLA leave for himself at all times material hereto. (*Id.*, ¶ 55).

"As a direct result of Defendant's unlawful forced leave and termination of Plaintiff's employment, Plaintiff has suffered and will continue in the future to suffer actual damages in the form of lost pay, lost benefits and other financial losses." (*Id.*, ¶ 56). Plaintiff "has and will be engaged in great efforts to mitigate his damages by searching for new employment, but he has to date, and may in the future be, unsuccessful in his efforts to find equivalent employment." (*Id.*, ¶ 57). Plaintiff seeks actual damages, including backpack and front pay and "other economic damage." (*Id.*, ¶ 58). Plaintiff further seeks liquidated damages in an amount equal to actual damages because Defendant and its agents intentionally and/or in bad faith violated the FMLA. (*Id.*, ¶ 59). Finally, Plaintiff seeks reinstatement of his employment and also reasonable attorneys' fees and costs. (*Id.*, ¶¶ 60-61).

Plaintiff also attached certain documents to the SAC. (Doc. 26 at 26-43). These include:

- A December 11, 2022, letter from Defendant Hexcel approving Plaintiff for FMLA intermittent leave and attaching a document from Matrix entitled "Instructions for Reporting Intermittent Time of Work." (*Id.* at 16-19).

- A December 21, 2022, letter from Defendant Hexcel informing Plaintiff that it had not received documentation to evaluate his leave request. (*Id.* at 21-22).

- A January 9, 2023, letter from Defendant Hexcel informing Plaintiff that Matrix had reviewed his leave documentation and had approved his intermittent leave and attaching a document from Matrix entitled "Instructions for Reporting Intermittent Time of Work." (*Id.* at 23-26).

- An April 24, 2023, letter from Defendant Hexcel informing Plaintiff that it had not received documentation to evaluate his leave request. (*Id.* at 27-29).

- A May 8, 2023, letter from Defendant Hexcel informing Plaintiff that it received notification of Plaintiff's leave request under the FMLA "and/or state leave entitlements" and that the request was not approved "because no documentation was returned to certify the leave." (*Id.* at 30-31).

- A printout of medical notes from Plaintiff's primary care physician. (*Id.* at 32-33).

- A May 22, 2023, letter from Defendant Hexcel approving Plaintiff's FMLA leave from 12/09/22 through 06/09/2023. (*Id.* at 34-36).

- A June 12, 2023, letter from Defendant Hexcel notifying Plaintiff that Matrix approved his request for intermittent leave on 02/09/2023, 02/10/2023, 3/02/2023, 03/07/2023. 04/03/2023, 04/04/2023 and attaching a document from Matrix entitled "Instructions for Reporting Intermittent Time of Work." (*Id.* at 37-40).

- A July 21, 2023, letter from Defendant Hexcel notifying Plaintiff that Matrix approved his FMLA leave and Short Term Disability, noting that he was approved from 4/10/2023-05/31/2023 and further notifying Plaintiff that his certification was valid through 05/31/2023. (*Id.* at 41-43).

In its reply brief in support of its motion to dismiss, Defendant attached certain documents. Defendant submitted the April 12, 2023, letter from Defendant Hexcel to Plaintiff informing him that it received his request for leave under the FMLA and that he had 7.7 weeks left of FMLA leave, and that the requested leave is expected to continue from 4/10/2023 through 07/02/2023. (Doc. 30-1 at 1-4). Defendant also submitted an April 11, 2023, letter from Matrix to Plaintiff informing him that Matrix has received his request for a leave of absence starting 04/10/2023 and attaching a checklist for Plaintiff to complete. (*Id.* at 5-11).

## III.    STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal*, 556 U.S. at 678). "The plausibility determination is 'a context-specific task that requires the reviewing

14

court to draw on its judicial experience and common sense.'" *Id.* at 786-87 (quoting *Iqbal*, 556 U.S. 679).

## IV.    ANALYSIS

Defendant seeks dismissal of the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 18). According to Defendant, each of Plaintiff's theories of FMLA interference liability must be dismissed because each rest on the "forced leave" theory of liability that the Court previously rejected. It is clear, however, that in the SAC Plaintiff does not only allege FMLA interference based on his "forced" or "involuntary" leave theory of liability. Rather, Delp ties his plausible factual allegations to specific alleged violations of the FMLA and its implementing regulations. *Hansler v. Lehigh Valley Hospital Network*, 798 F.3d 149 (3d Cir. 2015). For purposes of this motion, whether the alleged violations of the FMLA "[c]ame in the form of a termination, suspension, involuntary leave, or otherwise is irrelevant." *Howard v. Pennsylvania Dept. of Pub. Educ.*, 2013 WL 102662, at *8 (E.D. Pa. Jan, 9, 2013) (denying cross-motions for summary judgment, rejecting forced leave theory of FMLA interference on summary judgment, but permitting interference claim to proceed to trial based failure to restore and comply with FMLA statute and implementing regulations related to certifications) (citing *Rinehimer v. Cemcolifti, Inc.*, 292 F.3d 375, 384 (3d Cir. 2002)). In other words, Plaintiff does not allege only a "true" forced leave theory of FMLA interference.[2] He instead alleges that Hexcel interfered with his FMLA rights when it

---

[2]    In *Howard* the district court distinguished between a "true involuntary leave" claim and the claim advanced by the plaintiff: noting that plaintiff's claim is "for failure to reinstate" and "whether that failure came

15

required recertification for his previously certified FMLA intermittent leave. And he further plausibly alleges he should have been restored to his position or an equivalent position with equivalent pay when he returned to work on April 10, 2023, because his prior approved intermittent FMLA leave covered his April 7, 2023, absence for his serious chronic health condition. Accordingly, Defendant's motion will be denied.

The FMLA provides "that eligible employees are entitled to 12 workweeks of leave during any 12-month period if the employee has a 'serious health condition' that make the employee unable to perform the functions of her position." *Hansler*, 798 F.3d at 153 (citing 29 U.S.C. § 2612(a)(1)(D)). Once an employee returns from FMLA leave, that worker is entitled to be reinstated to his or her previous position or an equivalent one. *Id.* (citing 29 U.S.C. § 2614(a)(1))).

A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Implementing regulations promulgated by the Department of Labor ("DOL") define "continuing treatment by a health care provider" to include "chronic serious health condition[s]" that (i) "requires periodic visits (Defined as at least twice a year) for treatment by a health care provider . . . (ii) [c]ontinues over an extended period of time including

---

in the form of a termination, suspension, involuntary leave, or otherwise is irrelevant." *Howard*, 2013 WL 102662, at *8, *8 n.23. The Court will permit Plaintiff to proceed on his forced leave theory of FMLA interference, as resolution of this issue is best resolved on summary judgment.

recurring episodes of a single underlying condition)"; and (iii) "[m]ay cause episodic rather than a continuing period of incapacity." 29 C.F.R. § 825.102.

The FMLA provides that employers may not "interfere with, restrain, or deny the exercise or attempt to exercise" rights granted under the FMLA. 29 U.S.C. § 2615(a)(1). The implementing regulations further provide that "[a]ny violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act," including "discouraging an employee from using such leave," and "manipulation" by an employer "to avoid responsibilities under FMLA." 29 C.F.R. § 825.220(b).

Plaintiff brings a single count alleging interference under the FMLA. To state a claim for FMLA interference, a Plaintiff must establish:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) that plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*Capps. v. Mondelez Glob., LLC*, 847 F.3d 144, 155 (3d Cir. 2017) (internal citation and quotation marks omitted). One right guaranteed by the FMLA is "to be restored by the employer to the position of employment held by the employee [or an equivalent position] when the leave commenced" upon return from FMLA leave. 29 U.S.C. § 2614(a)(1). "An employee may not be required to take more FMLA leave than necessary to resolve the circumstances that precipitated the need for leave." 29 C.F.R. § 825.311(c).

17

For purposes of this motion, the first four elements of a FMLA interference claim are not disputed. Plaintiff has plausibly alleged that: (1) he was an eligible employee under the FMLA; (2) Defendant Hexcel is subject to the requirements of the FMLA; (3) he was entitled to FMLA leave; and (4) he gave Defendant notice of his intent to take FMLA.[3] According to Defendant, Plaintiff fails at the fifth element—that is, the SAC fails to plausibly allege the Delp was denied any benefits to which he was entitled to under the FMLA. The Court disagrees.

## A.   <u>Involuntary or Forced Leave as FMLA Interference</u>

One of the Plaintiff's theory of FMLA interference is based on an "involuntary" or "forced leave" theory of liability. As the Court indicated in a prior memorandum opinion dismissing the FAC, the forced or involuntary leave claim asserted by Plaintiff has yet to be recognized as form of FMLA interference by the Third Circuit. *See Delp v. Hexcel Corp.*, 2025 WL 2618766, at *10 (M.D. Pa. Sept. 10, 2025) (collecting cases). In a non-precedential opinion, however, the United States Court of Appeals for the Third Circuit noted "that forced leave, by itself, does not violate the FMLA." *Foster v. New Jersey Dept. of Transp.*, 255 Fed. App'x 670, 671 n.1 (3d Cir. 2007) (citations omitted). *Foster* cited a Second Circuit decision, holding that the plaintiff's forced leave claim was not interference under the FMLA. *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 175 (2d Cir. 2006)

---

[3]      Neither party seriously addressed the fourth element—that Plaintiff gave Defendant notice of intent to take FMLA leave.

("The FMLA says nothing about an employer's ability to 'force' an employee to take such leave, and such forced leave, by itself, does not violate any right provided by the FMLA."). The Second Circuit noted, however, that if the plaintiff was "able to demonstrate that such a forced leave interfered with, restrained, or denied the exercise or attempted exercise of a right provided under the FMLA, a cause of action might lie." *Id.* Here, in contrast, Plaintiff specifically alleges that the forced leave imposed upon him by Defendant did in fact interfere with his rights under the FMLA because he already sought, as was approved for, intermittent FMLA leave to cover his April 7, 2023 panic attack, and points to specific violations of the FMLA and its implementing regulations.

Other Circuit Court of Appeals to consider this issue have found that an FMLA interference claim based on an involuntary leave theory may be viable, but only in certain limited circumstances. *See, e.g., Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1244 (9th Cir. 2014) (recognizing that an "employer could find itself open to liability for forcing FMLA leave on the unwilling employee") (citing *Wyson*, 503 F.3d at 449); *Walker v. Trinity Marine Prods., Inc.*, 721 F.3d 542, 544-55 (8th Cir. 2013) ("In our view, if forced leave can amount to interference with a right provided under the FMLA, it can do so only if the employer's action prevents the employee from using benefits to which she is entitled under the Act."); *Grace v. Adtran, Inc.*, 470 Fed. App'x 812, 816 (11th Cir. 2012) ("This Court has not yet addressed whether an involuntary leave theory is actionable under the FMLA. We decline to do so in this case because—even under such a theory—Grace failed to

19

demonstrate that her claim would be ripe for review. . . . Because Grace failed to request additional FMLA leave after Adtran allegedly forced her to take her FMLA leave prematurely, her claim would not be ripe."); *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 769 n.3 (7th Cir. 2008) ("Ridings's initial complaint alleged FMLA interference because Ridings 'did not desire to take medical leave under the FMLA,' and Riverside attempted to force her to take leave. . . . If an employee does not wish to take FMLA leave but continues to be absent from work, then the employee must have a reason for the absence that is acceptable under the employer's policies, otherwise termination is justified.") (citing *Dotson v. BRP U.S., Inc.*, 520 F.3d 703, 708 (7th Cir. 2008)); *Wysong*, 503 F.3d at 449 (concluding that an employee alleging that he was forced unnecessarily to take FMLA leave may state "a type of interference claim" but only when "the employee seeks FMLA leave at a later date and such leave is not available because the employee was wrongfully forced to use FMLA leave in the past").

In his brief in opposition to Defendant's motion, Plaintiff claims that in *Budhun v. Reading Hospital & Medical Center*, 765 F.3d 245 (3d Cir. 2014), the Third Circuit approved a forced leave theory of FMLA interference. (Doc. 29 at 10-15). According to Plaintiff, "the Third Circuit approved a forced leave claim in a published opinion in *Budhun*, which was remarkably similar in fact-pattern to the matter at bar." (*Id.* at 10). Defendant dispute Plaintiff's categorization of *Budhun* as a forced leave case. (Doc. 30 at 2-3). Defendant attempts to distinguish *Budhun*, noting that, unlike here, the SAC "is devoid of an allegation

that he provided a fitness for duty certification or any allegation that Defendant failed to reinstate him upon receiving it" and therefore "Plaintiff's effort to transform *Budhun* into an involuntary leave case fundamentally misreads the case and misleads the Court as to its holding."[4] (*Id.* at 3).

---

[4]      Defendant appears to conflate the "fitness for duty certification" with the recertification process, although these regulations are distinct and Plaintiff appears to only allege a violation of the recertification regulations. 29 C.F.R. § 825.308 (recertification); 29 C.F.R. § 825.312 (fitness for duty certification). A review of the SAC and the exhibits attached thereto do not make clear that Hexcel required Delp to provide a recertification for his FMLA leave or a fitness for duty certification to permit him to return to work. Delp claims a violation of the recertification regulation, not the fitness for duty certification regulation. (Doc. 26, ¶ 51(g)). Moreover, to the extent those letters requested a fitness for duty certification, instead of a recertification, the letters attached to the SAC suggest that that Hexcel may have violated multiple subsections of 29 C.F.R. § 825.312. *See* 29 C.F.R. § 825.312(b) ("In order to require such a certification, an employer must provide an employee with a list of the essential functions of the employee's job no later than with the designation notice required by 825.300(d)... Clarification may be requested only for the serious health condition for which FMLA leave was taken. The employer may not delay the employee's return to work while contact with the health care provider is being made. No second or third opinions on a fitness-for-duty certification may be required."); 29 C.F.R. § 825.312(d) ("The designation notice required by § 825.300(d) shall advise the employee if the employer will require a fitness-for-duty certification to return to work and whether that fitness-for-duty certification must address the employee's ability to perform the essential functions of the employee's job."); 29 C.F.R. § 825.312(e) ("An employee may delay restoration of employment until an employee submits a required fitness-for-duty certification unless the employer has failed to provide the notice required in paragraph (d) of this section."); 29 C.F.R. § 825.312(f) ("An employer is not entitled to a certification of fitness to return to duty for each absence taken on an intermittent or reduced leave schedule. . . . ").

     "Prior to permitting an employee to return to work, an employer may request than an employee provide such a certification." *Budhun*, 765 F.3d at 252-53 (citing 29 C.F.R. § 825.312)). In the fitness for duty certification, "an employee's healthcare provider must merely certify that the employee is able to resume work." *Id.* at 253. "An employer may require that this certification address the employee's ability to perform the essential functions of her job, ***but only if the employer provides a list of essential functions to the employee at the time that the employer notices*** the employee that she is eligible for FMLA leave." *Id.* (emphasis added). "A designation notice 'informs the employee whether the FMLA leave request is approved; it also informs the employee of the amount of leave that is designated and counted against the employee's FMLA entitlement. An employer may also use this form to inform the employee that the certification is incomplete or insufficient and additional information is needed." *Calio v. Camden Cnty. Bd. of Chosen Freeholders*, 2023 WL 3674664, at *1 n.4 (3d Cir. May 26, 2023) (citations omitted).

In *Budhun*, the Third Circuit vacated the district court's grant of summary judgment to the defendant on the plaintiff's FMLA interference claim. Like the Plaintiff here, the *Budhan* plaintiff was terminated when she did not return to work following the end of her FMLA leave. The Court held that a plaintiff may state a claim for FMLA interference when the employer refused to return the employee to work after the employee provided the employer a fitness for duty certification. *Id.* at 252 ("Reading argues that Budhun did not really attempt to return to work on August 16, 2010, because shortly after arriving at BHP, she left and sought a note from Dr. Battista requesting leave until September 8, 2010. The record, however, indicates that there is a genuine dispute of material fact regarding whether Budhun attempted to invoke her right to return to work on that date."). Further, the Third Circuit found genuine disputes of material fact "exists regarding whether Budhun was exercising her right to return to work on August 16, 2010, and whether she could not perform an essential function of her job." *Id.* at 256.

Although the Court does not consider *Budhun* to be a true forced leave case, it is rather similar to the claim alleged by Delp.[5] The Court need not definitely rule on this issue at the motion to dismiss stage because the SAC, unlike the FAC, now plausibly alleges that by placing Delp on forced continuous FMLA leave Hexcel interfered with the exercise, or

---

[5]    The Third Circuit did not refer to the plaintiff's claim as "forced leave." However, the District Court likened the claim to a forced leave theory in a footnote. *See Budhun v. Reading Hosp. & Med. Ctr.*, 2011 WL 6002024, at *5 n.9 (noting that "Ms. Budhun's allegations resemble an involuntary leave theory, which has not been adopted in this circuit.") (E.D. Pa. Nov. 30, 2011), *affirmed in part, vacated in part and remanded*, 765 F.3d 245 (3d Cir. 2014).

22

attempt to exercise, Delp's rights under the FMLA, including by denying Delp's right to take his preapproved certified FMLA intermittent leave instead of the continuous leave Hexcel is alleged to have forced Plaintiff to take.

## B. Regulatory Violations

Defendant also moves to dismiss the SAC on the grounds that Plaintiff has not plausibly alleged a violation of the FMLA or its implementing regulations. In opposition, Plaintiff cites to the Third Circuit opinion in *Hansler* in support. Specifically, he cites to a portion of the *Hansler* opinion where the Third Circuit stated "[a]ny violation of the [FMLA] or of [its] regulations constitute interfering with the exercise of an employee's right. 29 C.F.R. § 825.220(b). To assert an interference claim, an employee must establish, among things, that she was denied benefits under the Act." *Hansler*, 798 F.3d at 154; *see also* 29 C.F.R. § 825.220(b) ("Any violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act").

In *Hansler*, the district court granted the defendant's motion to dismiss the plaintiff's claim of FMLA interference. The Third Circuit reversed, holding that an employee may premise a claim for FMLA interference on an employer's alleged regulatory violations. In *Hansler*, the plaintiff submitted a medical certification to her employer for intermittent leave. Several weeks later, after taking several days off work, plaintiff was terminated by her employer without seeking any clarification about her medical certification, as required by law. The Third Circuit found that "by alleging that Lehigh Valley terminated her instead of

affording a chance to cure any deficiencies in her medical certification, Hansler has stated a claim that Lehigh Valley violated the Medical Leave Act." *Hansler*, 798 F.3d at 151.

According to Defendant, "Plaintiff cites numerous regulations under the FMLA in search of a life preserver on which his involuntary leave claim can cling. Yet, these citations—and, in fact, mis-citations—amount to nothing more than red herrings to distract the Court from the ultimate nature of his claim (involuntary leave) and demonstrate a fundamental misunderstanding of the interworking of the FMLA." (Doc. 28 at 12). The Court disagrees. Delp has plausibly alleged that Hexcel denied him benefits under FMLA to which he was entitled by imposing more onerous medical recertifications than permitted by the FMLA and its implementing regulations, and by further failing to restore to him to his prior or equivalent position upon his return from intermittent leave on April 10, 2023. Accordingly, Defendant Hexcel's motion to dismiss will be denied.

**Denying Plaintiff's Right to Utilize His Approved Intermittent Leave**

Plaintiff alleges that Defendant interfered with his FMLA rights by unlawfully denying him his right to utilize his intermittent FMLA leave and by requesting a recertification. (Doc. 26, ¶ 51(g)). 29 C.F.R. § 825.308 is a regulation entitled "Recertifications for Leave Taken Because an Employee's Own Serious Health Condition or Serious Health Condition of a Family Member." It provides

> (a) 30–day rule. An employer may request recertification no more often than every 30 days and only in connection with an absence by the employee, unless paragraphs (b) or (c) of this section apply.

24

(b) More than 30 days. If the medical certification indicates that the minimum duration of the condition is more than 30 days, an employer must wait until that minimum duration expires before requesting a recertification, unless paragraph (c) of this section applies. For example, if the medical certification states that an employee will be unable to work, whether continuously or on an intermittent basis, for 40 days, the employer must wait 40 days before requesting a recertification. In all cases, an employer may request a recertification of a medical condition every six months in connection with an absence by the employee. Accordingly, even if the medical certification indicates that the employee will need intermittent or reduced schedule leave for a period in excess of six months (e.g., for a lifetime condition), the employer would be permitted to request recertification every six months in connection with an absence.

(c) Less than 30 days. An employer may request recertification in less than 30 days if:
(1) The employee requests an extension of leave;
(2) Circumstances described by the previous certification have changed significantly (e.g., the duration or frequency of the absence, the nature or severity of the illness, complications). For example, if a medical certification stated that an employee would need leave for one to two days when the employee suffered a migraine headache and the employee's absences for his or her last two migraines lasted four days each, then the increased duration of absence might constitute a significant change in circumstances allowing the employer to request a recertification in less than 30 days. Likewise, if an employee had a pattern of using unscheduled FMLA leave for migraines in conjunction with his or her scheduled days off, then the timing of the absences also might constitute a significant change in circumstances sufficient for an employer to request a recertification more frequently than every 30 days; or
(3) The employer receives information that casts doubt upon the employee's stated reason for the absence or the continuing validity of the certification. For example, if an employee is on FMLA leave for four weeks due to the employee's knee surgery, including recuperation, and the employee plays in company softball league games during the employee's third week of FMLA leave, such information might be sufficient to cast doubt upon the continuing validity of the certification allowing the employer to request a recertification in less than 30 days.

(d) Timing. The employee must provide the requested recertification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts.

(e) Content. The employer may ask for the same information when obtaining recertification as that permitted for the original certification as set forth in § 825.306. The employee has the same obligations to participate and cooperate (including providing a complete and sufficient certification or adequate authorization to the health care provider) in the recertification process as in the initial certification process. See § 825.305(d). As part of the information allowed to be obtained on recertification for leave taken because of a serious health condition, the employer may provide the health care provider with a record of the employee's absence pattern and ask the health care provider if the serious health condition and need for leave is consistent with such a pattern.

(f) Any recertification requested by the employer shall be at the employee's expense unless the employer provides otherwise. No second or third opinion on recertification may be required.

29 C.F.R. § 825.308.

Plaintiff alleges that Defendant interfered with his FMLA rights by unlawfully denying him his right to utilize his intermittent FMLA leave "after approving his recertification in January 2023 and without requesting another certification thereafter." (Doc. 26, ¶ 51(g)). He alleges that Defendant's conduct violated 29 C.F.R. § 825.308. Defendant asserts that this claim fails, because Plaintiff was not denied any intermittent leave. (Doc. 28 at 15-16). More specifically, "Defendant never doubted the validity of Plaintiff's medical certification, but instead, after Plaintiff's meeting with EAP counselors, it was believed Plaintiff's mental health condition had escalated where he needed continuous leave to seek additional medical evaluation." (*Id.*) (citing SAC, ¶¶ 15-21)).

Intermittent leave is defined as "leave taken in separate periods of time due to a single illness or injury, rather than for one continuous period of time, and may include leave

of periods from an hour or more to several weeks. Examples of intermittent leave would include leave taken on an occasional basis for medical appointments, or leave taken several days at a time spread over a period of six months, such as chemotherapy." 29 C.F.R. § 825.102; *see also* 29 C.F.R. § 825.202(a) ("Intermittent leave is FMLA leave taken in separate blocks of time due to a single qualifying reason."). In contrast, continuous leave "is leave taken in one continuous block of time, up to a maximum of 12 consecutive workweeks." *Scalia v. Dept. of Transp. & Pub. Facilities*, 985 F.3d 742, 744 (9th Cir. 2021). "Continuous leave is the default form of leave." *Id.* (citing 29 U.S.C. § 2612(a)(1)). The FMLA further provides that the taking of intermittent leave "shall not result in a reduction in the total amount of leave to which the employee is entitled under subsection(a) beyond the amount of leave actually taken."[6] 29 U.S.C. § 2612(b)(1); *see also* 29 C.F.R. § 825.205(b)(1).

29 C.F.R. § 825.308 is a regulation concerning "an employer's request for medical recertification." *Jackson v. United States Postal Servs.*, 149 F.4th 656, 672 (6th Cir. 2025). "An employer may request recertification no more often than every 30 days and only in connection with an absence by the employee, unless paragraphs (b) or (c) of this section

---

[6]     Where a plaintiff alleges he was encouraged to use his FMLA leave time in full day allotments, rather than as intermittent leave, this may constitute unlawful FMLA interference. *See Barrasso v. Children's Hospital of Pittsburgh of UPMC*, 2019 WL 342461, at *11 (W.D. Pa. Jan. 28, 2019) ("However, when viewed in the light most favorable to her, this exchange supports her contention that she was discouraged from coming in to work later in the day if she was feeling better. In fact, a reasonable jury could find that she was specifically encouraged to take her FMLA time in full day allotments in violation of 29 C.F.R. § 825.205(a)(1).").

apply." 20 C.F.R. § 825.308(a). "[A]n employer may request a recertification of a medical condition every six months in connection with an absence by the employee. Accordingly, even if the medical certification indicates that the employee will need intermittent or reduced schedule leave for a period in excess of six months (e.g., for a lifetime condition), the employer would be permitted to request recertification every six months in connection with an absence." 29 C.F.R. § 825. 308(b).

An employer may request recertification sooner if "[t]he employee requests an extension of leave" or if "[c]ircumstances described by the previously certification have changed significantly (e.g., the duration or frequency of the absence, the nature or severity of the illness, complications)." 29 C.F.R. § 825.308(c)(1), (c)(2); *see Jackson*, 149 F.4th at 672 ("The regulations state than an employer may request recertification if the [c]circumstances described by a pervious certification have changed significantly." *Id.* "This regulation, explicitly, envisions a scenario where an employee takes unforeseeable intermittent leave *beyond* their medical certification."[7] *Jackson*, 149 F.4th at 672 (emphasis in original).

29 C.F.R. § 825.308(d) provides that an employer may request recertification in less than 30 days if it "receives information that casts doubt upon the employee's stated reason for the absence or the continuing validity of the certification." *Id.* Once an employer

---

[7]      The Sixth Circuit noted that its "holding today clarifies a significant confusion previously left unaddressed: how district courts should consider requests from leave under the FMLA under circumstances where the amount of leave requested by the employee is inconsistent with the duration of incapacity estimated on a medical certification form." *Jackson*, 149 F.4th at 672.

requests recertification, an employee must be given 15 days to comply with the request "unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts." 29 C.F.R. § 825. 308(d).

"After the initial approval and certification, an employer is allowed to periodically request a recertification for an employee's previously approved FMLA." *Calio v. Camden Cnty. Bd. of Chosen Freeholders*, 2021 WL 3464879, at *3 (D.N.J. Aug. 6, 2021), *aff'd*, 2023 WL 3674664 (3d Cir. May 26, 2023). "This recertification can generally be requested no more often than every six months for a lifelong condition, unless an exception applies." *Id.* "One of these exceptions is if the circumstances described by the previous certification have changed significantly, with the frequency of the absence being specifically listed as being one such significant change." *Id.*

Here, Plaintiff alleges that he was approved for intermittent leave by Defendant. (Doc. 26, ¶¶ 8-11, 14, 24, 37-42). "For at least a year prior to his termination, Plaintiff was approved to take intermittent leave for severe anxiety by Defendant through its third-party administrator." (*Id.*, ¶ 7). He further alleges that he was informed on July 21, 2023, by Defendant "for the first time that he purportedly used all of his FMLA days as of May 31, 2023" and that he was ultimately terminated on July 21, 2023. (*Id.*, ¶¶ 43, 51(c)). As reflected in the exhibits attached to the SAC, Plaintiff was approved for intermittent leave at a "[f]requency of 2 events per 1 Month(s), Duration of 2 Day(s) per event." (*Id.* at 24).

29

Plaintiff was thus entitled to FMLA leave for two episodes per month, and two days per episode, totaling four days per month across two episodes.

On December 11, 2022, Plaintiff received a letter from Hexcel informing him it received notification of his request for leave for your own health condition under the FMLA and informing him that he was required to certify his condition within fifteen days. (*Id.* at 16). On December 21, 2022, Plaintiff received a letter from Defendant Hexcel informing him that "we have not received the documentation need to evaluate approval or denial status of your leave" and informing him "[i]f the documentation is not received by 12/29/2022 or if sufficient information is not provided in a timely manner, your leave may be denied." (*Id.* at 21).

On January 9, 2023, Plaintiff received from a letter from Defendant Hexcel informing him that that his intermittent leave was approved and that "Your certification is valid from 12/09/2023 through 06/09/2023." (*Id.* at 24). On June 12, 2023, Plaintiff received a letter from Defendant Hexcel informing him that his intermittent leave was approved and that "Your certification is valid from 12/09/2022 through 12/08/2023." (*Id.* at 38). In other words, Plaintiff alleges he was approved for intermittent FMLA leave up until December 8, 2023. On July 21, 2023, the date on which Plaintiff alleges he was terminated, he received a letter informing him that his continuous "forced leave" requested from 4/10/2023 through 05/31/2023 "are approved under the Family Medical Leave Act (FMLA) and/or state leave entitlements and Short Term Disability" and that "Your Certification is valid through

30

05/31/2023." (*Id.* at 42).  Between these dates Defendant Hexcel requested medical recertification from Defendant concerning continuous FMLA leave which Defendant is alleged to have "forced" Delp to take.[8]

But Plaintiff has plausibly alleged that Hexcel violated 29 C.F.R. § 825.308 by imposing more onerous recertification requests than is permitted by the FMLA and its implementing regulations.[9]  While Hexcel claims it reasonably believed that Delp's circumstances had changed, thus warranting its request for recertification, Delp has plausibly alleged other facts which the Court must accept at true, and discovery may reveal whether Hexcel's belief was reasonable or not under the circumstances.  Moreover, whether a belief is reasonable or not is generally an issue of fact not subject to resolution on a motion to dismiss.

---

[8]        (Doc. 26 at 28) (April 24, 2023, letter from Hexcel to Delp informing him that it had received his request for leave on or about April 11, 2023, and that "we have not received the documentation needed to evaluate approval or denial status of your leave request" and informing him "[i]f the documentation is not received by 05/01/2023 or sufficient information is not provided in a timely manner, your leave may be denied."); (*Id.* at 31) (May 8, 2023, letter from Hexcel to Delp informing him that it "had received notification you are requesting a leave for your own health condition" under the FMLA and/or state leave entitlements, and that "Your leave request is NOT approved under FMLA because no documentation was returned to certify the leave"); (*Id.* at 35) (May 22, 2023, letter from Hexcel to Delp informing him that his FMLA leave is approved from 12/09/2022 through 06/09/2023 and that "[i]f the documentation is not received by 06/09/2023 or if sufficient information is not provided in a timely manner, you may not be eligible for your leave to continue").

[9]        The FMLA statute "deems medical certification sufficient for intermittent leave where a healthcare provider for an eligible employee indicates:  1) the date the serious health condition commenced; 2) the probable duration of the condition; 3) the appropriate medical facts within the knowledge of the healthcare provider regarding the condition; 4) a statement that the employee is unable to perform the functions of the position of the employee; and 5) a statement of the medical necessity and expected duration of the intermittent leave." *Crowelle v. Cumberland-Dauphin Harrisburg Transit Auth.*, 2024 WL 4468492, at *7 (M.D. Pa. Oct. 10, 2024) (citing 29 U.S.C. §§ 2613(a), (b)(1)-(3), (b)(4)(B), (b)(6)).

31

**Failure to Reinstate**

29 C.F.R. § 825.100(c) provides that "[a]n employee generally has a right to return to the same position or an equivalent position with equivalent pay, benefits, and working conditions at the conclusion of the leave. The taking of FMLA leave cannot result in the loss of any benefit that accrued prior to the start of the leave." *Id.*; *see also* 29 U.S.C. § 2614(a). 29 C.F.R. § 825.215 is a DOL regulation entitled "Equivalent Position." The regulation provides, in relevant part,

(a) Equivalent position. An equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority.

(b) Conditions to qualify. If an employee is no longer qualified for the position because of the employee's inability to attend a necessary course, renew a license, fly a minimum number of hours, etc., as a result of the leave, the employee shall be given a reasonable opportunity to fulfill those conditions upon return to work.

(c) Equivalent pay.
(1) An employee is entitled to any unconditional pay increases which may have occurred during the FMLA leave period, such as cost of living increases. Pay increases conditioned upon seniority, length of service, or work performed must be granted in accordance with the employer's policy or practice with respect to other employees on an equivalent leave status for a reason that does not qualify as FMLA leave. An employee is entitled to be restored to a position with the same or equivalent pay premiums, such as a shift differential. If an employee departed from a position averaging ten hours of overtime (and corresponding overtime pay) each week, an employee is ordinarily entitled to such a position on return from FMLA leave.
(2) Equivalent pay includes any bonus or payment, whether it is discretionary or non-discretionary, made to employees consistent with the provisions of paragraph (c)(1) of this section. However, if a bonus or other payment is based on the achievement of a specified goal such as hours worked, products sold or

32

perfect attendance, and the employee has not met the goal due to FMLA leave, then the payment may be denied, unless otherwise paid to employees on an equivalent leave status for a reason that does not qualify as FMLA leave. For example, if an employee who used paid vacation leave for a non–FMLA purpose would receive the payment, then the employee who used paid vacation leave for an FMLA–protected purpose also must receive the payment.

29 C.F.R. § 825.215(a)-(c).

According to Defendant, this claim must be dismissed because these "regulations govern an employee's right to return to work following FMLA leave and thus do not support an involuntary leave claim generally, nor Plaintiff's claim specifically." (Doc. 28 at 13). Defendant further claims that "[i]t is not a violation of 29 C.F.R. § 825.100(c), 29 C.F.R. § 825.215(a) and 29 C.F.R. § 825.215(a) [sic] to put someone on FMLA leave when they are not able to work and have a qualifying reason." (*Id.*). Moreover, Defendant asserts that "Plaintiff's right to return to work after he exhausted his FMLA leave in May of 2023 was not unconditional." *Id.*

"To prevail on a failure-to-reinstate claim, an employee must show (1) that he was not returned to his former or equivalent position upon returning from leave and (2) that he could perform the essential functions of the job." *Howard*, 2013 WL 102662, at \*8 (E.D. Pa. Jan. 9, 2013) (citing *Rinehimer v. Cemcolifti, Inc.*, 292 F.3d 375, 384 (3d Cir. 2002)).

Under the SAC's new theories of FMLA interference liability, not advanced in the FAC, Plaintiff has now alleged sufficient facts to make it plausible that Defendant interfered with his FMLA rights when it required more onerous recertifications than those permitted by the floor set by the FMLA and its implementing regulations, by requiring him to

take more leave than necessary to address the circumstances that precipitated the need for leave, and by failing to restore him to his prior or equivalent position upon returning from his FMLA intermittent leave.  29 U.S.C. § 2612(b)(1); 29 U.S.C. § 2613(a), 29 U.S.C. § 2613(b)(6); 29 U.S.C. § 2613(e); 29 U.S.C. § 2614; 29 C.F.R. § 825.100(c); 29 C.F.R. § 825.200; 29 C.F.R. § 825.205(a)(1); 29 C.F.R. § 825.205(a)(2); 29 C.F.R. § 825.215(a); 29 C.F.R. § 825.215(c); 29 C.F.R. § 825.308.[10]

Delp plausibly alleges he was medically certified and approved for intermittent leave on Friday April 7, 2023, when he had a panic attack at work. (Doc. 26, ¶¶ 7-14).  He further alleges this intermittent leave was covered by his prior certification for chronic anxiety which Defendant approved on January 9, 2023.  (*Id.*, ¶¶ 12, 49).  He alleges he was entitled to up to two episodes per month for a total of two days per episode for a total of four days of FMLA per month to treat his chronic anxiety. (*Id.* at 24, 38).  When he sought to return to

---

[10]    At the motion to dismiss stage, the Court will not wade through each and every claimed violation of the FMLA and its implementing regulations.  Nor it will engage in a mathematical calculation of Plaintiff's alleged amount of leave, where it is apparent that the exhibits attached to the SAC are not the full history of the communications between Plaintiff and Hexcel and Plaintiff has plausibly stated an FMLA interference claim based on several violations of the FMLA and its regulations.

Nor will the Court consider the alleged April 12, 2023, letter from Hexcel to Delp attached to Defendant's reply brief in support of its motion to dismiss. (Doc. 30-1).  Once again, Defendant only submitted this document along with its reply brief and the Court will not, and need not, consider it at this stage of litigation. According to Defendant, "[v]arious courts have held when considering a motion to dismiss that a court may incorporate by reference authentic documents that a defendant attaches if the plaintiff's claim are based on that document, even where plaintiff does not explicitly allege the contents of the document in the complaint." (*Id.*) (collecting cases). The Court again will decline to consider this document, because Defendant once again only attached it to its reply brief and Plaintiff does not address this document so the Court cannot consider it indisputably authentic at this stage of the proceedings.

34

work, on Monday April 10, 2023, he alleges that Defendant would not permit him to return until he was cleared by a psychiatrist and threatened him with job loss if he did not comply. (*Id.*, ¶¶ 15-21).   But at that time–on April 10, 2023–Delp alleges he was already approved for intermittent leave based on the medical certification of his healthcare provider for his chronic anxiety.  (*Id.*, ¶¶ 24, 33, 37-42, 49, 55); *see also Price v. Int'l Paper Co.*, 2022 WL 17253824, at *2-3 (5th Cir. Nov. 3, 2022) (non-precedential) (reversing district court grant of summary judgment to defendant employer, noting:  (1) the employer "interfered with his FMLA rights by improperly subjecting him to return-to-work requirements associated with continuous leave, rather than intermittent leave," (2) district court erred when it "assumed that Price intended to miss work on August 7 as part of his FMLA leave" but  "the uncontroverted evidence establishes that Price returned to work at the conclusion of this FMLA leave period on August 6" and "[d]espite his return" his supervisor asked him "to leave because he did not have a medical release," and (3) the district erred by concluding that "because Price was absent from work for a sixteen-day period, his leave was continuous rather than intermittent").

Plaintiff has further plausibly alleged that Hexcel failed to restore his employment with the same or equivalent position and with equivalent pay upon his return from intermittent leave on April 10, 2023.[11]  (*Id.*, ¶¶ 14, 45, 50, 51(a), 51(c), 51(e).  Although

---

[11]    Without the benefit of discovery, the Court expressly declines to consider whether Defendant's alleged failure to restore Plaintiff took place on any date other than April 10, 2023.

Defendant claims it restored Delp on April 10, 2023, Delp plausibly alleges otherwise and claims he was not restored but rather involuntarily placed on continuous FMLA leave and forbidden to return until he was medically cleared which the Court can reasonably infer was pursuant to Hexcel's policy and in violation of the FMLA and its regulations. 29 U.S.C. § 2614; 29 C.F.R. § 825.100(c); 29 C.F.R. § 825.215(a), (c).

Similarly, to the extent that Hexcel claims it reasonably believed that circumstances changed warranting its request for a new recertification, Delp has plausibly alleged other facts which the Court must accept at true, and discovery may reveal whether Hexcel's belief was reasonable or not under the circumstances. If, as he alleges, Delp "was capable of performing the essential functions of his position without accommodation at the time he returned from his approved intermittent leave" on April 10, 2023, Defendant Hexcel "would be required to restore his employment." *Howard*, 2013 WL 102662, at *8.

## V.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss will be denied. A separate order follows.

Robert D. Mariani
United States District Judge